******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

# LINDSEY MARCO *v.* STARR INDEMNITY AND LIABILITY COMPANY
## (AC 43376)

Prescott, Cradle and DiPentima, Js.

*Syllabus*

The plaintiff sought to recover damages for breach of contract from the defendant insurer. The plaintiff was awarded damages for personal injuries she sustained when a large fight broke out while she was at a bar owned by C Co., the defendant's insured. C Co. assigned its rights under its general liability insurance policy to the plaintiff. The defendant, however, declined to defend or indemnify C Co. with respect to the plaintiff's injuries because the insurance policy contained an exclusion for any injuries arising out of assault or battery, and the plaintiff commenced this action. The defendant filed a motion for summary judgment on the ground that it did not owe C Co. a duty to defend because the plaintiff's claim was barred by the insurance policy's assault and battery exclusion. The court, *Swienton, J.*, denied the motion, finding that genuine issues of material fact existed, including relating to the cause of the plaintiff's injuries. The court, *J. Moore, J.*, then granted the plaintiff's motions to quash and for a protective order in which she argued that the defendant should not be allowed to take her deposition because the only evidence that should be considered in determining the case were the complaint and the insurance policy. Following that decision, the defendant filed a motion to strike the plaintiff's claim for a jury trial on the ground that there were no factual issues for a jury to decide, as the duty to defend was purely a legal question to be resolved by the court. After hearing oral argument on the matter, Judge Moore issued an order to bifurcate the trial, with the issue of the duty to defend to be considered first by the court. He requested that the initial stage of the trial be assigned to another judge because he had been involved in the parties' pretrial settlement discussions, and the matter was assigned to Judge Aurigemma. Both parties filed briefs on the issue and waivers of oral argument, asking the court to decide the matter on the papers. Judge Aurigemma concluded that the defendant did not have a duty to defend C Co. because the insurance policy did not permit recovery for injuries sustained from an assault. After requesting additional briefs on the matter and scheduling oral argument, which the parties waived, Judge Moore found that Judge Aurigemma's decision was dispositive of all of the issues in the case and rendered judgment in favor of the defendant, from which the plaintiff appealed to this court. *Held*:

1. The trial court did not err in ordering a court trial on the legal issue of the duty to defend following its denial of summary judgment on that issue: in denying summary judgment, the court did not find that the plaintiff was entitled to judgment on the matter but only that genuine issues of material fact existed, which precluded the court from finding that the defendant was entitled to judgment as a matter of law; moreover, no genuine issue of material fact existed as to whether the defendant owed a duty to defend C Co. because that question was purely a legal issue to be decided by the court; furthermore, the law of the case doctrine did not preclude Judge Moore from concluding that the duty to defend question was a legal matter to be decided before a jury trial could be held to address any remaining factual issues, despite the court's prior denial of summary judgement on the matter, as, under the doctrine, a trial judge may reach a contrary conclusion on an issue of law previously decided if the judge was convinced that the prior ruling was wrong.

2. The trial court did not improperly deprive the plaintiff of a jury trial on the issue of whether the defendant had a duty to defend C Co. because the plaintiff was not entitled to a jury trial on the matter: both the interpretation of pleadings and the question of whether an insurer owes a duty to defend are issues of law, which must always be decided by the court.

3. There was no merit to the plaintiff's claim that Judge Moore should

have recused himself to avoid the appearance of impropriety due to his involvement in the pretrial settlement negotiations: Judge Moore did not play a role in deciding the issues of liability or damages in the case, he only made the determination that Judge Aurigemma's ruling was dispositive of all of the issues, which decision was administrative in nature; moreover, despite the fact that the parties were aware that the matter would appear before Judge Moore following Judge Aurigemma's decision, the plaintiff did not raise the issue of a potential appearance of impropriety until after she received an adverse decision, and such a decision alone is insufficient to form the basis of a claim of judicial bias; furthermore, the plaintiff failed to provide any legal or factual analysis supporting her argument for recusal in her brief and, therefore, failed to set forth a factual basis on which a reasonable person might have questioned Judge Moore's impartiality.

Argued February 16—officially released June 1, 2021

*Procedural History*

Action to recover damages for, inter alia, breach of contract, and for other relief, brought to the Superior Court in the judicial district of New Britain, where the court, *J. Moore, J.*, ordered the trial to be bifurcated; thereafter, the matter was tried, in part, to the court, *Aurigemma, J.*; judgment for the defendant; subsequently, the court, *J. Moore, J.*, determined that the judgment was dispositive of all of the issues in the case and rendered judgment for the defendant on all counts, from which the plaintiff appealed to this court. *Affirmed.*

*Joseph Mulshine*, for the appellant (plaintiff).

*Melissa Brill*, pro hac vice, and *Raymond J. Carta*, with whom, on the brief, were *Laura Dowgin*, pro hac vice, and *John W. Cannavino, Jr.*, for the appellee (defendant).

*Opinion*

CRADLE, J. The plaintiff, Lindsey Marco, appeals from the judgment rendered in favor of the defendant, Starr Indemnity and Liability Company, on the ground that the defendant had no duty to defend its insured, Copa Entertainment Group, LLC (Copa Entertainment), the owner and operator of Zen Bar (bar), the location where the plaintiff had sustained injuries for which she had been awarded damages by an arbitrator in a separate action (underlying action). On appeal, the plaintiff claims that the trial court (1) erred in ordering a court trial on the legal issue of whether the defendant had a duty to defend Copa Entertainment when summary judgment previously had been denied on that issue, (2) improperly deprived her of a jury trial on the issue of whether the defendant had a duty to defend its insured, and (3) should have recused itself from this case to avoid the appearance of impropriety after it was involved in pretrial settlement negotiations. We affirm the judgment of the trial court.[1]

The following procedural history is relevant to the plaintiff's claims on appeal. On June 23, 2014, the plaintiff filed an action against, inter alia, Copa Entertainment, seeking to recover damages for injuries that she sustained on May 31, 2013, while she was a patron at the bar. In her initial complaint, the plaintiff alleged that, on that night, "numerous altercations broke out in various places inside [the bar] and eventually the altercations grew and spilled out of the building and into the parking lot surrounding [the bar], where the plaintiff . . . was viciously and severely physically assaulted, punched, kicked and dragged so as to cause her to suffer extensive personal injuries . . . ." In that complaint, the plaintiff specifically named four individuals and one John Doe, who, she alleged, "repeatedly struck [her], about the head, face and body, thereby knocking her to the ground, rendering her unconscious and causing her to suffer severe and permanent personal injuries." On October 25, 2015, the plaintiff amended her complaint, alleging that she had sustained her injuries when she was "negligently impacted by a person, persons or object and/or viciously and severely trampled, physically assaulted, punched, kicked and dragged . . . ." The names of the specific individuals who allegedly injured the plaintiff were omitted from the amended complaint.

The plaintiff's claims against Copa Entertainment, which sounded in negligent security and recklessness, were submitted to an arbitrator. The arbitrator found that the plaintiff's injuries were "proximately caused by . . . Copa Entertainment" and awarded her $131,500 in damages. The arbitration award was thereafter confirmed by the Superior Court.

After the arbitration award was confirmed, Copa

Entertainment assigned to the plaintiff its rights under its insurance policy issued by the defendant. The general liability policy that the defendant issued to Copa Entertainment contained an exclusion for injuries arising out of assault and battery. The defendant relied on that exclusion in declining to defend or indemnify Copa Entertainment in the underlying action.

On July 17, 2017, the plaintiff commenced this action against the defendant, based on the defendant's failure to defend or indemnify Copa Entertainment in the underlying action, alleging breach of the insurance contract, breach of the covenant of good faith and fair dealing, violation of the Connecticut Unfair Trade Practices Act, General Statutes § 42-110a et seq., and the Connecticut Unfair Insurance Practices Act, General Statutes § 38a-815 et seq., and common-law bad faith. On May 22, 2018, the defendant filed a motion for summary judgment on the ground that it did not owe Copa Entertainment a duty to defend because the plaintiff's claim was barred by the assault and battery exclusion of the insurance policy. The plaintiff filed an opposition to the defendant's motion for summary judgment, and the court, *Swienton, J.*, heard argument from the parties.

On May 22, 2018, Judge Swienton denied the defendant's motion for summary judgment. The court explained, inter alia: "The motion for summary judgment at this stage is a substitute for the declaratory judgment action which the defendant declined to pursue. [The defendant] now is asking the court to make a determination based upon a number of police reports—which the court notes have not been authenticated—that the incident in which the plaintiff was injured is not covered under the policy insuring [Copa Entertainment]. The court has reviewed the entire record presented and finds that there remain genuine issues of material fact in the present case. One of these issues is whether [the defendant] has a contractual obligation to indemnify [Copa Entertainment] in the first action based upon whether the injuries the plaintiff sustained resulted only from an assault and battery. The court cannot decide these disputed factual issues on a motion for summary judgment."

On September 27, 2018, the plaintiff filed a motion to quash and a motion for protective order, seeking to prevent the defendant from deposing her in this case on the ground that, "in the present contract action, the only pieces of evidence to be considered by the jury are the complaints and the insurance policy in effect at the time of loss." On October 15, 2018, the court, *J. Moore, J.*, heard oral argument from the parties on these motions and other discovery motions, and the plaintiff reiterated her contention that only the complaint and the insurance policy should be considered in this case. The defendant agreed. Accordingly, Judge Moore issued

the following order: "Based upon the representations of the plaintiff's counsel made today during the hearing on this and related motions, the discovery at issue is not reasonably calculated to lead to the discovery of admissible evidence at trial. If the presentation of the plaintiff's case later involves an attempt to introduce factual evidence outside of the evidence discussed during the hearing today, e.g., evidence consisting of both underlying, operative complaints and the insurance policy at issue, the defendant's attorney shall reclaim this motion and the court will seriously reconsider this motion."

On November 23, 2018, the defendant filed a motion to strike the plaintiff's claim for a jury trial, which she had filed on September 6, 2017, on the ground that there were no factual issues for the jury to decide, as the duty to defend was purely a legal question for resolution by the court. The plaintiff filed an objection, arguing that the court had denied summary judgment on the defendant's claim that it had no duty to defend on the ground that issues of fact existed and that she was entitled to have a jury trial on those factual issues. In her objection, the plaintiff also argued that she was entitled to a directed verdict on the duty to defend issue based on the prior denial of summary judgment. Specifically, she argued: "The defendant, by way of the court's denial of [its] motion for summary judgment, has lost on that issue and that issue should not be allowed to be relitigated by anyone and judgment on that issue should be directed to the plaintiff with a finding that the defendant breached its duty to defend . . . ." The court heard oral argument on December 10, 2018.[2]

On December 12, 2018, the court entered the following order: "Practice Book § 15-1 provides that in all cases, whether claimed as jury cases or court cases, the court may order that one or more of the issues be tried before the others. Practice Book § 16-9 provides that, even where [there] are mixed questions of law and fact, the court 'shall decide all issues of law and all questions of law . . . .' Our Supreme Court has held that the 'question of whether an insurer has a duty to defend its insured is purely a question of law . . . .' *Community Action for Greater Middlesex County, Inc.* v. *American Alliance Ins. Co.*, 254 Conn. 387, 395, [757 A.2d 1074 (2000)].

\* \* \*

"Despite the plaintiff's arguments to the contrary, even though the defendant raised both the duty to defend and the duty to indemnify in its motion for summary judgment, Judge Swienton did not decide whether the defendant breached its duty to defend in the underlying case. First, the plaintiff did not move for summary judgment itself. Second, Judge Swienton found an issue of fact in denying the defendant's motion

for summary judgment and cited the defendant's duty to indemnify. As set forth above, our Supreme Court has held clearly that an insured's duty to defend is a purely legal question, e.g., one that could not have involved a question of fact. For the reasons set forth above, the court orders that this trial . . . be staged so that the purely legal question of the defendant's duty to defend its insured in the underlying case is considered first by the court. The allegations of the operative complaint at the time of the award and judgment must be compared to the language of the policy by a court. . . . Since this court has attempted to settle this case at a pretrial, this court will request the presiding civil judge to assign it to another judge for the initial determination of whether the defendant had a duty to defend its insured." (Citation omitted.)

On December 19, 2018, the plaintiff filed a motion to reconsider on the ground that "[t]his matter has been fully, exhaustively litigated in its entirety." In support of that argument, the plaintiff referred to the prior denial of the defendant's motion for summary judgment and the defendant's failure to appeal from that ruling. In her motion, she reasserted her argument that she was entitled to a jury trial but also argued that the duty to defend should not be "relitigated" because it already had been decided by Judge Swienton when she denied the defendant's motion for summary judgment.

The next day, Judge Moore denied the plaintiff's motion to reconsider, explaining: "[T]he underlying order, which is the subject of this motion to reargue or reconsider, did not, as the [plaintiff] appears to believe, strike the plaintiff's jury claim. Rather, [it] simply ruled that the issue of the duty to defend, which had not been decided in the summary judgment ruling, shall be staged first. Since the issue of the duty to defend is a purely legal one, it will be heard by the court. If the plaintiff succeeds on this threshold issue of the duty to defend, the defendant will be estopped from challenging the amount of the underlying judgment. What the [plaintiff] needs to understand is that the order on the defendant's motion for summary judgment, which was decided on the basis that there were outstanding issues of fact, cannot have decided the issue of the defendant's duty to defend its insured, for the following reasons. A court's decision on the duty to defend is a purely legal question that involves comparing the allegations of the operative complaint to the policy language through the lens of Connecticut law on how the duty to defend shall be interpreted. Since the judge who denied summary judgment did so on the basis of outstanding genuine issues of fact, she did not decide the issue of the duty to defend, which is a purely legal issue. Moreover, although the defendant raised the issue of a defense duty in its summary judgment motion, the court that ruled on the summary judgment motion did not decide that duty in its decision. Finally, the plaintiff did not move for summary

judgment when opposing the defendant's motion for summary judgment and the court's findings when denying the motion for summary judgment cannot be used at this time to support judgment for the plaintiff."

On January 16, 2019, following a trial management conference, Judge Moore issued another order: "The court has concluded that the sole issue to be taken up during the first stage of this trial shall be whether the defendant breached its duty to defend its insured in the underlying case. Based upon what this court has found, both previously and also in this order, this is a legal question to be decided by the court. This court, since it attempted to settle this case, will ask the civil presiding judge to assign the first stage of this trial to another judge for a hearing in the near future. The parties should take up the issue of briefing—whether to, and when to—with the judge to whom the hearing is assigned after the matter has been set down for a hearing."

The matter was thereafter assigned to the court, *Aurigemma, J.*, for trial of the issue of whether the defendant owed a duty to Copa Entertainment in the underlying action. The parties filed briefs in support of their respective positions. Both parties also filed written waivers of oral argument and asked the court to decide the issue on the papers. By way of a memorandum of decision dated April 16, 2019, Judge Aurigemma concluded that the defendant had no duty to defend Copa Entertainment because the applicable insurance policy did not permit recovery for injuries sustained from an assault.

On May 7, 2019, Judge Moore issued the following order: "The court orders counsel to brief the issue of whether this decision is dispositive of all of the issues in the case and whether, as a result, judgment shall enter. The briefs shall be filed on or before 6/4/19 at 5 p.m., and shall indicate whether or not argument is requested." Judge Moore then supplemented his order as follows: "The court schedules oral argument on the issues raised in this order and in the briefs filed pursuant to this order on 7/31/19 at 9:30 a.m." Both parties filed briefs, as ordered, wherein the plaintiff argued that Judge Aurigemma's decision was not dispositive of all of the issues in this case, and the defendant argued that it was dispositive. In their respective briefs, both parties expressly waived oral argument, so Judge Moore considered this issue on the briefs.

On July 30, 2019, Judge Moore issued an order concluding that Judge Aurigemma's decision on the duty to defend disposed of all of the issues in the case, and he rendered judgment in favor of the defendant on all of the counts of the plaintiff's complaint.

On August 19, 2019, the plaintiff filed a motion to reargue on the ground that Judge Moore should not have heard this case after he pretried it. She argued

that Judge Moore had acknowledged the potential of an appearance of impropriety in his bifurcation order, when he ordered the duty to defend to be assigned to a different judge. The plaintiff asserted: "If the judge suspected the appearance of impropriety, having unsuccessfully pretried the case numerous times, then the avoidance of the appearance of impropriety by this judge should extend to the bifurcation and the final ruling on duty to defend and the entire case as well past the pretrials." On that ground, the plaintiff argued: "[T]his case should have what the court believes are its operative rulings negated and the matter should be set down for a trial de novo to a jury as was the direction this case was headed before the bifurcation by the judge who later sought to avoid the appearance of impropriety."

On August 22, 2019, Judge Moore denied the plaintiff's motion to reargue. He first concluded that the motion "fail[ed] to articulate any . . . [valid legal reason] that would permit the court to allow reargument or to reconsider its decision . . . holding that Senior Judge Aurigemma's decision on the duty to defend is dispositive of all of the issues in this case." Judge Moore also addressed the plaintiff's recusal argument and explained: "The reason that this court asked another judge to decide the defense duty issue was that this court had made statements to counsel about the relative strength and/or weaknesses of the parties' arguments on the defense duty issue in depth both in private and public sessions during the pretrial settlement conference.[3] The court denies the instant motion for the following reasons. This court, *J. Moore*, *J.*, made it clear to the parties that it would be the judge deciding the issues set forth in [its] order [in docket entry] #172 [that determined whether Judge Aurigemma's decision on the duty to defend was dispositive]. It was this court, *J. Moore*, *J.*, who invited briefing from the parties in [docket entry] #167. This court discussed its vacation schedule with the parties in attempting to set down oral argument in [its] order [in docket entry] #170.01. This court indicated that it would take the issues discussed in the parties' briefs, [docket entries] ##168 and 169, on the papers in [its] order [in docket entry] #171.01. It was eminently clear to counsel for both parties, long prior to the court issuing [its] order [in docket entry] #172, that this court, *J. Moore*, *J.*, would decide whether Senior Judge Aurigemma's defense duty decision was dispositive of all issues in this case. Counsel for the plaintiff had ample opportunity to raise any perceived conflicts with this court deciding this issue prior to this issue being decided. Counsel for the plaintiff never raised this issue in writing and waived oral argument. To raise such claims of judicial conflict at this point is a classic case of seeking a second bite at the apple." (Footnote in original.) This appeal followed.

I

The plaintiff first claims that the trial court erred when it "ordered" the defendant's claim that it had no duty to defend Copa Entertainment "to be relitigated" because "the court should have accepted the ruling of the court, *Swienton, J.*," "on the first summary judgment."[4] We disagree.

We construe the plaintiff's argument in this regard as pertaining to the law of the case doctrine. "The law of the case doctrine provides that when a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case may treat that decision as the law of the case, *if it is of the opinion that the issue was correctly decided*, in the absence of some new or overriding circumstance. . . . The law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . [O]ne judge may, in a proper case, vacate, modify, or depart from an interlocutory order or ruling of another judge in the same case, upon a question of law." (Emphasis added; internal quotation marks omitted.) *Barnes* v. *Connecticut Podiatry Group, P.C.*, 195 Conn. App. 212, 231 n.16, 224 A.3d 916 (2020).

"A judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge. . . . Nevertheless, if . . . [a judge] becomes convinced that the view of the law previously applied by his coordinate predecessor was clearly erroneous and would work a manifest injustice if followed, he may apply his own judgment. . . . From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. . . . In an appeal to this court [in which] views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important question is not whether there was a difference but which view was right." (Citation omitted; internal quotation marks omitted.) *Brown* v. *Otake*, 164 Conn. App. 686, 703, 138 A.3d 951 (2016).

The plaintiff's argument that the trial court erred in not applying the law of the case doctrine and was bound by the earlier denial of summary judgment on the duty to defend fails for two reasons. First, in denying summary judgment, Judge Swienton held only that genuine issues of fact existed that precluded it from holding that the defendant was entitled to judgment as a matter of law. In denying summary judgment, Judge Swienton did not, as the plaintiff seems to argue, conclude that the plain-

tiff was entitled to judgment on that issue.[5] Because the denial of summary judgment is not a final judgment; see *First Merchants Group Ltd. Partnership* v. *Fordham*, 138 Conn. App. 220, 224, 50 A.3d 963, cert. denied, 307 Conn. 937, 56 A.3d 716 (2012); the duty to defend issue was not resolved on summary judgment and further proceedings were required for its resolution.

Moreover, as explained herein, the law of the case doctrine recognizes that a trial judge may choose to reach a contrary conclusion on an issue of law previously decided if the judge is convinced that the prior ruling was wrong. See *Brown* v. *Otake*, supra, 164 Conn. App. 703. That is precisely what occurred in this case. Judge Moore noted that Judge Swienton concluded that genuine issues of material fact existed that precluded her from granting the defendant's motion for summary judgment, but he disagreed because, as our Supreme Court has held, the question of whether the defendant owed a duty to defend was purely a legal issue to be decided by the court. We agree. See *Moore* v. *Continental Casualty Co.*, 252 Conn. 405, 409, 746 A.2d 1252 (2000) (question of whether insurer has duty to defend its insured is purely question of law). Accordingly, the law of the case doctrine did not preclude Judge Moore from concluding that the legal question of the existence of a duty to defend needed to be decided before a jury trial could be held to address any remaining factual issues.

II

The plaintiff also claims that the trial court improperly deprived her of her right to a jury trial on the issue of whether the defendant had a duty to defend Copa Entertainment in the underlying action. We disagree.

General Statutes § 52-216 provides in relevant part: "The court shall decide all issues of law and all questions of law arising in the trial of any issue of fact; and, in committing the action to the jury, shall direct them to find accordingly. The court shall submit all questions of fact to the jury, with such observations on the evidence, for their information, as it thinks proper, without any direction as to how they shall find the facts. . . ." See also Practice Book § 16-9.

Although the plaintiff failed to provide this court with the transcript of the hearing on this issue, which was held on December 10, 2018, we note that she strenuously had argued against having her deposition taken on the ground that the only evidence necessary to resolve the issues presented in this case were the operative complaint and the subject insurance policy. When asked during oral argument before this court which facts remained at issue for a jury to decide in this case, the plaintiff's counsel responded that the jury needs to interpret the pleadings. It is well settled that "[t]he interpretation of pleadings is always a question of law

for the court . . . ." (Internal quotation marks omitted.) *Manere* v. *Collins*, 200 Conn. App. 356, 366, 241 A.3d 133 (2020). Likewise, as noted herein, the issue of whether an insurer owes a duty to defend is also a legal issue to be determined by the court. *Moore* v. *Continental Casualty Co.*, supra, 252 Conn. 409. Accordingly, the plaintiff was not entitled to a jury trial on the issue of whether the defendant had a duty to defend Copa Entertainment.

### III

Finally, the plaintiff claims that Judge Moore should have recused himself from this case to avoid the appearance of impropriety after he was involved in pretrial settlement negotiations. Specifically, the plaintiff argues that "[t]he trial court erred when *J. Moore, J.* did not remain recused after prior recusal on account of having unsuccessfully pretried the case." In so arguing, the plaintiff essentially challenges the impartiality of the court. Despite the gravity of such a claim, the plaintiff's brief is devoid of any citations to the trial court record that reflect when Judge Moore pretried the case or his alleged recusal from it. The plaintiff's brief also lacks any legal authority to support her assertions.

Despite the deficiencies of the plaintiff's brief,[6] our review of the record reveals that the plaintiff raised the issue of a potential appearance of impropriety in her August 19, 2019 motion to reargue Judge Moore's determination that Judge Aurigemma's ruling on the duty to defend issue was dispositive of all of the plaintiff's claims against the defendant in this case. The plaintiff did not cite any legal authority in support of this argument in her motion to reargue, nor has she done so in her brief to this court. As noted herein, prior to deciding that Judge Aurigemma's decision was dispositive of all of the plaintiff's claims, the parties were afforded, by Judge Moore, the opportunity to file briefs in support of their respective positions. The plaintiff did not, in her brief to Judge Moore, raise the issue that he should be recused from this case, nor did she, at any point prior to her receipt of Judge Moore's ruling, suggest that he not be involved in this case.

To be sure, "[w]hen a judge engages in a pretrial settlement discussion in a court case, he should automatically disqualify himself from presiding in the case in order to eliminate any appearance of impropriety and to avoid subtle suspicions of prejudice or bias." *Timm* v. *Timm*, 195 Conn. 202, 204, 487 A.2d 191 (1985). That principle, however, is founded on the notion that "[w]hen . . . a judge engages in [discussions] looking to the settlement of a case . . . in which he will be called upon to decide the issues of liability and damages . . . [i]t is . . . impossible to avoid questions as to whether the judge can disregard . . . matters disclosed in the conference . . . and whether a prelimi-

nary judgment, formed at the conference and predicated on unsubstantiated claims of proof, may have some subtle influence on a final judgment after a full hearing. . . . It is inevitable that the basis is laid for suspicion, no matter how unfounded or unjustified it may be, and that failure to concur in what the judge may consider an adequate settlement may result in the imposition, upon a litigant or his counsel, of some retributive sanction or the incurrence of judicial displeasure." (Internal quotation marks omitted.) *Carvalhos Masonry, LLC* v. *S & L Variety Contractors, LLC*, 180 Conn. App. 237, 240–41, 183 A.3d 697 (2018).

Judge Moore did not play any role in deciding the issues of liability or damages in this case. Judge Aurigemma decided the issue of liability and, having found that the defendant was not liable, there was no issue of damages to be decided. Judge Moore did not, as the plaintiff contends, "rule himself on the remaining issues in the case" after Judge Aurigemma determined that the defendant had no duty to defend the plaintiff. Because Judge Moore did not, in any way, perform the role of a "trier" of the issues of liability or damages in this case, there was no danger of him using any information to which he may have become privy during settlement negotiations against the plaintiff. Rather, Judge Moore's conclusion that Judge Aurigemma's ruling was dispositive of all of the issues in this case was administrative in nature. Accordingly, Judge Moore was not required to recuse himself from this case.

Moreover, as noted herein, Judge Moore rejected the plaintiff's argument that he should have recused himself on the ground that the parties had been made aware that the matter would appear before Judge Moore following Judge Aurigemma's decision but the plaintiff did not raise the issue of a potential appearance of impropriety until after she received a decision that was adverse to her.[7] It is clear that the plaintiff's claim that Judge Moore should have recused himself from this case arises solely from the adverse ruling entered against her, which may not form the basis for a claim of judicial bias. See, e.g., *Tracey* v. *Tracey*, 97 Conn. App. 278, 284–85, 903 A.2d 679 (2006) ("it is clear that adverse rulings by the judge do not amount to evidence of bias sufficient to support a claim of judicial disqualification" (internal quotation marks omitted)).

We finally note that "[s]peculation is insufficient to establish an appearance of impropriety. . . . [A] factual basis is necessary to determine whether a reasonable person, knowing all of the circumstances, might reasonably question the trial judge's impartiality. . . . Vague and unverified assertions of opinion, speculation and conjecture cannot support a motion to recuse . . . ." (Internal quotation marks omitted.) *McKenna* v. *Delente*, 123 Conn. App. 137, 144, 1 A.3d 260 (2010). Because the plaintiff's brief is bereft of any legal or

factual analysis supporting her argument that Judge Moore should have recused himself, she has failed to set forth a factual basis on which a reasonable person might reasonably have questioned his impartiality.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] In the statement of issues contained in her appellate brief, the plaintiff purports to set forth nine enumerated issues on appeal. In the table of contents of her brief, the plaintiff sets forth eight claims. The corresponding page numbers that are listed for each claim are inaccurate. In addition, the majority of the plaintiff's claims are inadequately briefed or briefed in an obscure manner and devoid of any supporting legal authority. Our recitation of the claims set forth herein is based on a very generous interpretation of her brief. See *Starboard Fairfield Development, LLC* v. *Gremp*, 195 Conn. App. 21, 31, 223 A.3d 75 (2019) ("We are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than [mere] abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . We do not reverse the judgment of a trial court on the basis of challenges to its rulings that have not been adequately briefed." (Internal quotation marks omitted.)).

[2] The plaintiff did not provide the transcript of the December 10, 2018 hearing to this court.

[3] "Conversely, the court did not present any substantive previews or opinions as to whether a decision on the duty to defend would be dispositive of all issues in the case during pretrial settlement discussions."

[4] We note that the record reflects that only one motion for summary judgment was filed and heard in this case.

[5] In fact, Judge Swienton did not expressly address the issue of whether the defendant had a duty to defend Copa Entertainment. Judge Swienton expressly referenced only the defendant's duty to indemnify.

[6] In her brief to this court, the plaintiff argues: "Perhaps it is only merely by prudence or custom that Superior Court judges always recuse themselves from being triers in cases which they have actively pretried. Most commonly judges become privy to facts and other information in the settlement efforts of a pretrial that would not be admissible at trial. As well, judges will sometimes tip their hand as to how they will rule on a matter in the setting of a pretrial as it could facilitate settlement and judges don't sit on cases they pretry. For these and other obvious reasons it was at least imprudent for [Judge Moore] to pretry this case various times over a long period of time and following that [to] make an assignment out to another judge to reconsider a prior judge's ruling on a motion for summary judgment and then to rule himself on the remaining issues in the case. The appearance at least of impartiality should be afforded this plaintiff." This comprises the entirety of the plaintiff's claim.

[7] Although the plaintiff raises this claim in her motion to reargue, she has not appealed from this ruling, either by citing it on her appeal form or by briefing it in any meaningful way.